**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**TIMOTHY A. THOMPSON**                                                    **PLAINITFF**

**v.**                                              **CIVIL ACTION NO.: 1:11-CV-137-SA-DAS**

**DIRECT OUTDOOR PRODUCTS,**
**a/k/a DOP, LLC**                                                         **DEFENDANT**

**MEMORANDUM OPINION**

In this products liability case, Plaintiff Timothy Thompson seeks recovery for injuries

sustained after falling from a treestand manufactured and sold by Defendant Direct Outdoor

Products ("DOP"). Thompson asserts that the treestand failed to conform to express and implied

warranties. DOP has filed a Motion to Exclude [64] Thompson's Liability Expert, A.K. Rosenhan.

Defendant has additionally filed a Motion for Summary Judgment [66], contending that without

expert testimony, Plaintiff is unable to establish the essential elements of his claim. However,

because there is no requirement under Mississippi law for expert testimony to prove a breach of

warranty, the Court denies the Motion the Motion for Summary Judgment.[1]

**BACKGROUND FACTS & PROCEDURAL HISTORY**

In October 2010, Plaintiff Timothy Thompson purchased a "Guide Gear 17.5' Deluxe 2 Man

Ladder Stand" from an online catalogue.[2] The stand consists of a platform designed to seat two

hunters which is secured against a tree and accessed by climbing an attached steel ladder.

Thompson purchased the stand intending to use it to go deer hunting with his stepson. The stand

was shipped directly from DOP's warehouse to Thompson's house via the United States Parcel

---

[1]The Court will conduct a <u>Daubert</u> hearing regarding Defendant's Motion to Exclude [64] outside the presence of the jury prior to commencement of the trial.

[2]DOP admits that it manufactured the stand in question.

Service.  The box arrived containing the stand components, an instruction manual, which Thompson

read in its entirety, and a  safety DVD.

The first page of the instruction manual states:

**THE MAXIMUM WEIGHT CAPACITY OF THIS STAND IS 500 POUNDS\***

*The maximum carrying capacity of 500 lbs is defined as the total combined weight of the hunter, weapon, backpack, and any other gear carried aloft.

There is evidence in the record that the ladder—as opposed to the platform itself—was only tested

to safely support 300 pounds.[3]  However, this was not disclosed to the consumer in the materials

accompanying the stand.  In fact, the ladder was affixed with a warning sticker which stated:

"WARNING, DO NOT exceed the 500 lb maximum weight limit that includes the weight of the

hunter [singular], clothing, and all gear carried aloft."

On the morning that Thompson intended to assemble the stand, he and his father, Harvey

Allen "Skip" Thompson (Skip), watched the safety DVD at Skip's house.  Thompson and Skip

brought the box containing all the stand components to the woods where they intended to erect the

stand.  After arriving at the site, Thompson and Skip opened the box and inspected its contents to

determine that there were no missing or damaged parts.  Thompson selected a tree which was level,

"not dead in any way," and that "had a nice, big structure to it," and began assembling and erecting

---

[3]As part of its product testing, the stand's ladder was subjected to a "300 pound repetitive load test."    When questioned about this topic, Mickey Bowles, DOP's 30(b)(6) representative stated:

>  Q:      Why would it [the ladder] only be tested with a 300-pound repetitive test load if this tree stand had a capacity of 500 pounds?
>  A:      Well, that's because it's intended that only one person at a time is on the stand . . .
>  Q:      Does it say anywhere in [the instruction manual] that the ladder is only for 300 pounds? . . .
>  A:      I don't know that – I don't know that it states that specifically.

the ladder stand according to the included directions.

After the stand was assembled and secured against the tree, Thompson, who weighed approximately 308 pounds, began ascending the ladder to the top of the platform. Thompson reached the platform at the top of the ladder, but before he could secure his safety tether, the ladder buckled and bent inward, causing Thompson to fall. The last thing Thompson remembers is placing his knees on the foot platform. In Thompson's words:

> The last thing I remember is I was up there, my – I put my knees up there, and about the time my knees hit, I heard my dad holler. I don't know what he hollered; I just heard him holler. And then, the next thing I remember I was on the ground . . . .

> Skip, who was holding the base of the ladder at the time, described the accident as follows:

> He went up the stand. There were no problems at all. And I remember as he got almost to the platform, about where his knees would be at the platform, he pushed down to reach for the tree, and when he did, where the top section and the second section are put together, it bowed in. . . . And after that, the top pivoted to the left. And when it pivoted, it was gone.

According to Skip, after the ladder buckled, the top section of the stand came away from the tree and "it dumped him [Thompson] straight down." Thompson fell to the ground and sustained serious injuries. Thompson commenced the instant suit, asserting in his Complaint that the stand breached an express warranty that it could support five hundred pounds, as well as the implied warranty of merchantability.

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "An issue of material

fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington

Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing

that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

"Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated

assertions, and legalistic argumentation do not adequately substitute for specific facts showing a

genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson,

477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he

court must view the facts in the light most favorable to the non-moving party and draw all

reasonable inferences in its favor." Deville, 567 F.3d at 164.

## DISCUSSION

### I.    Breach of Express Warranty

The Mississippi Products Liability Act ("MPLA") provides that:

(a) The manufacturer or seller of the product shall not be liable if the claimant does
not prove by the preponderance of the evidence that at the time the product left the
control of the manufacturer or seller:

(i)      1. The product was defective because it deviated in a material way
from the manufacturer's specifications or from otherwise identical

units manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings or instructions, or

3. The product was designed in a defective manner, or

4. The product breached an express warranty or failed to conform to expressfactual representations upon which the claimant justifiably relied in electing to use the product; and

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Actions brought under section 11-1-63(a) require that the plaintiff "prove (ii), (iii), and at least one of four elements of a claim under (i)." Forbes v. Gen. Motors Corp., 935 So. 2d 869, 873 (Miss. 2006).

DOP premises its motion on the proposition that without expert testimony, Thompson is unable to establish that the product was defective or establish that the defect proximately caused his injuries. It is true that, as a general rule, claims of manufacturing or design defects must be supported by expert testimony. See e.g. Cothren v. Baxter Healthcare Corp., 798 F. Supp. 2d 779, 782 (S.D.Miss. 2011);[4] Hammond v. Coleman Co., Inc., 61 F. Supp. 2d 533, 542 (S.D Miss. 1999), aff'd 209 F.3d 718 (5th Cir. 2000); Childs v. Gen. Motors Corp., 73 F. Supp. 2d 669, 671 (N.D. Miss. 1999). However, in Forbes v. General Motors Corp., the Mississippi Supreme Court held that a plaintiff was not necessarily required to offer expert testimony to establish a breach of warranty

---

[4]DOP relies heavily on Cothren for the proposition that Thompson is required to offer expert testimony in this case to survive summary judgment. However, Cothren did not involve a breach of warranty claim and did not discuss Forbes v. General Motors Corp., discussed *infra*.

claim. 935 So. 2d at 877-78. The Forbes court found that a plaintiff in such a case "need only to show that the product did not live up to its warranty" to establish a breach, and distinguished claims for breach of warranty from potentially more complex technical claims involving design or manufacturing defects.

In Forbes, a plaintiff sued an automobile manufacturer after her airbag failed to deploy in an collision. The plaintiff asserted that the failure of the airbag to deploy breached an express warranty in the owner's manual of the car, which stated that if a front-end collision was "hard enough, the 'air bag' inflates in a fraction of a second." Id. at 874. The plaintiff in Forbes offered some expert testimony regarding whether the amount of force sustained in the crash was "hard enough" such that the airbag should have deployed. Id. at 876. However, the trial court sustained the defendant's motion for a directed verdict, specifically citing the plaintiffs' failure to present a qualified expert to opine that the air bag system in the car was somehow deficient. Id. at 877. The Mississippi Court of Appeals affirmed in a 5-4 decision. Id. at 872. On writ of certiorari, the Mississippi Supreme Court determined that the trial court erred by entering a directed verdict, and remanded for a new trial, stating, "No legal authority exists to require expert testimony in this case, and *we do not want to encourage such a rule*." Id. at 877 (emphasis added).[5] In light of Forbes, the Fifth Circuit has stated, "[a]t minimum, [Plaintiff's] failure to properly offer expert testimony, standing alone, cannot destroy his breach of warranty claims." Winfun v. Daimler Chrysler Corp., 255 F. App'x 772, 774 (5th Cir. 2007). Applying this precedent, the Court finds that the Plaintiff

---

[5]To be sure, the court also stated: "We do not intend for today's holding to become a strict rule that no expert testimony is ever needed in any products liability case involving an an automobile's air bag. The nature of these fact driven actions is such that we must approach them on a case-by-case basis." Id. at 878.

has demonstrated genuine disputes of material fact as to the issues raised by the Defendant.

Accordingly, the Motion for Summary Judgment will be denied.

A.      Defect

Defendant first argues that without an expert, Thompson is unable to offer any evidence as

to how the stand was defective. The "defective condition" contemplated by subsections (a)(ii) and

(a)(iii) of the MPLA "is merely the satisfaction of one of four possible elements under subsection

(a)(i)." Forbes, 935 So. 2d 879.[6]  A claim under subsection (a)(i)(4) (breach of express warranty),

"does not require that the product be defective, but simply requires a failure of the product to

perform as warranted." Id.  Therefore, to establish a "defective condition," Thompson "need only

show that the product did not live up to its warranty" and "fault does not need to be shown to

establish a breach." Id. at 877-78.  Defendant admits that the stand included an express warranty

indicating that it had a weight bearing limit of 500 pounds.  Thompson testified that at the time of

the incident, he weighed approximately 308 pounds.  Viewing the evidence in the light most

favorable to Thompson, a reasonable juror could conclude that the product failed to conform to its

warranty which Thompson justifiably relied upon when electing to use the product. Having satisfied

subsection (a)(i)(4), Thompson has established a "defective condition" and would be inappropriate

---

[6]As explained in Forbes, a "defective condition," under subsections (a)(ii) and (a)(iii)
should be distinguished from the requirement of a "defective product" for claims brought under
subsections (a)(i)(1) (manufacturing defect), (a)(i)(2) (failure to contain adequate warnings or
instructions), or (a)(i)(3) (design defect).  In other words, the failure of the product to conform to
its warranty constitutes the defective condition, and "expert testimony is not needed to establish
that the product did not perform as warranted. " Forbes, 935 So. 2d at 877.  This principle is
illustrated in the Mississippi Judicial College's pattern instruction on breach of express warranty,
which in pertinent part instructs the jury that to find for the plaintiff,  it must find "[t]hat the
warranty or other express factual representation was breached or false, which made the product
defective . . ." Miss. Model Jury Instructions: Civil § 17:1 (2011).

to grant summary judgment on this basis.

The Court also notes Defendant only asserts that Thompson is unable to establish a defect, and offers no argument regarding the requirement of subsection (a)(ii) that "the defective condition"—in this case, the failure of the product to perform as warranted—rendered the product unreasonably dangerous to Thompson. However, even if DOP had properly raised this issue, the Court would find that a reasonable juror could conclude that the failure of the ladder to bear the warranted weight load could render it unreasonably dangerous to the user. Similarly, although not addressed in DOP's motion, a reasonable juror could conclude that no material change in the product occurred after it left DOP's control based on the circumstantial evidence in the record. See Forbes, 935 So. 2d at 879. Accordingly, DOP's argument that Thompson is unable to show a defect is unavailing.

B.    Causation

Defendant also asserts that Thompson is unable to establish causation. The proximate cause is the "cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." Forbes, 935 So. 2d 880 (citing Delahoussaye v. Mary Mahoney's, Inc., 783 So. 2d 666, 671 (Miss. 2001)). Merely offering evidence that an injury occurred following the use of the allegedly defective product is insufficient to establish liability. Rutledge v. Harley-Davidson Motor Co., 364 F. App'x 103, 107 (5th Cir. 2010). However, in this case, "much more than just proof of an accident has been laid before [the Court]." Forbes, 935 So. 2d 879. The Court finds that Plaintiff has presented sufficient evidence from which a reasonable juror to conclude that the failure of the product to conform as warranted—the ladder "bow[ing] in"—was the proximate cause of Thompson's fall. Defendant

8

cites the cases of <u>Rogers v. Barlow Eddy Jenkins</u>, 22 So. 3d 1219 (Miss. Ct. App. 2009) and <u>Cole</u>

<u>v. Noble Drilling Corp.</u>, 2007 WL 2475944 (S.D. Miss. 2007), <u>aff'd</u> 288 F. App'x 931 (5th Cir.

2008) as being analogous to the present case.  However, the Court finds they are both factually

distinguishable.

In <u>Rogers</u>, a worker fell to his death from a ladder.  22 So. 3d at 1220.  The only eye witness

to the accident testified that he could not tell what caused the fall.  <u>Id.</u> at 1221.  The decedent's estate

sued the ladder's manufacturer under a theory of negligence, alleging that the ladder's failure to

conform to certain OSHA guidelines caused the fall.  <u>Id.</u>    The trial court granted summary

judgment in favor the manufacturer, finding that the Plaintiff had failed to offer any proof of

negligence or proximate cause.  <u>Id.</u> at 1222.  The Mississippi Court of Appeals affirmed, finding that

"No one knows if [Plaintiff] slipped, missed a step, became dizzy, or simply fell for some other

unknown reason totally unrelated to the dimensions of the ladder. [Plaintiff]'s presence on the ladder

at the time of his fall was not enough to say that the ladder was the proximate cause of his fall when

there was no evidence presented as to why [Plaintiff] fell."  <u>Id.</u> at 1224.  Here, a reasonable juror

could conclude, based on Skip Thompson's testimony as well as the physical evidence, that

Thompson's fall was proximately caused by the failure of the stand ladder to perform as warranted.

Cole is similarly distinguishable.  In <u>Cole</u>, a Longshoreman and Harbor Workers Act case,

a plaintiff fell down a stairwell in a vessel his employer was helping to refurbish.  The Plaintiff

alleged that the stairs lacked tread with a proper grip, which contributed to the plaintiff's injuries.

2007 WL 2475944, at *7.  However, the Plaintiff could not remember how he fell or what caused

the fall.  <u>Id.</u> at *9-10.  The Court concluded that "no casual link has been provided by Plaintiff

between any purported defect in the stair treads and his fall." Id. at *9.  As stated above, here,

Plaintiff has presented sufficient evidence from which a reasonable juror could conclude that the

failure of the stand to conform to its warranty proximately caused Thompson's injuries.

Accordingly, the Motion for Summary Judgment is denied as to Thompson's claim for breach of

express warranty.

## II.     Implied Warranty of Merchantability

Thompson also asserts a claim for breach of the implied warranty of merchantability. The

implied warranty of merchantability arises under Mississippi Code Annotated Section 75-2-314,

which states in part that: "a warranty that goods shall be merchantable is implied in a contract for

their sale if the seller is a merchant with respect to goods of that kind."  Miss. Code Ann. § 75-2-

314(1).  The statute further provides that:

> (2) Goods to be merchantable must be at least such as:
>         (a) Pass without objection in the trade under the contract description; and
>         (b) In the case of fungible goods, are of fair average quality within the
>         description; and
>         (c) Are fit for the ordinary purposes for which such goods are used; and
>         (d) Run, within the variations permitted by the agreement, of even kind, quality and
>         quantity within each unit and among all units involved; and
>         (e) Are adequately contained, packaged and labeled as the agreement may require;
>         and
>         (f) Conform to the promises or affirmations of fact made on the container or label if
>         any.

Miss. Code Ann. § 75-2-314(2).

There are five elements that a Plaintiff must prove to recover under section 75-2-314:  (1)

That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved

in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and

damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature

10

of the goods, and (5) notice to the seller of the injury. <u>Vince v. Broome</u>, 443 So. 2d 23, 26 (Miss. 1983); <u>see also</u> <u>CEF Enter., Inc. v. Betts</u>, 838 So. 2d 999, 1003 (Miss. Ct. App. 2003) ("To recover for a breach of an implied warranty, the plaintiff must establish: (1) the defendant was a merchant which sold goods of the kind involved in the transaction, (2) that the defect was present when the product left the defendant's control, and (3) the injuries to the plaintiff were proximately caused by the defective nature of the goods.").

Regarding Plaintiff's implied warranty claims, Defendant again asserts that Thompson cannot prove a defect or causation without expert testimony. However, for the reasons stated above, a reasonable juror could conclude that the stand "failed to conform to the promises or affirmations of fact made on the container or label," which would render the product unmerchantable ("defective" in the context of a breach of implied warranty claim) and that this failure proximately caused Plaintiff's injuries. Accordingly, the Motion for Summary Judgment is denied as to this claim.

## CONCLUSION

The Motion for Summary Judgment is DENIED.

SO ORDERED on this, the 7th day of September, 2012.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**

11